IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOSE FELIX MONTANO-LOPEZ,   :

    Petitioner,   :

vs.   : CIVIL ACTION NO. 14-0035-KD-C

UNITED STATES OF AMERICA,   : CRIMINAL ACTION NO. 13-0059-KD-C

    Respondent.

## REPORT AND RECOMMENDATION

Petitioner, Jose Felix Montano-Lopez, has filed with this Court a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 38). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(b). Following consideration of all relevant pleadings in the case, it is recommended that Montano-Lopez's § 2255 motion be summarily **DISMISSED**.

## FINDINGS OF FACT

On December 12, 2012, an individual subsequently indicted on federal charges of distributing methamphetamine ("Rivera") met with an undercover Mobile County Sheriff's Office ("MCSO") investigator to sell him an ounce of methamphetamine ICE. (*See* Doc. 30, Presentence Investigation Report, at 3.) During that meeting, the undercover investigator told Rivera that he wanted three ounces of ICE on his next purchase, to which Rivera responded that he would have to call his supplier, "Hielera," and have him bring the ICE down on his next trip to Mobile. (*Id.*) Before that purchase of ICE was consummated, however, Rivera was arrested on December 16, 2012. (*Id.*)

On December 20, 2012, Rivera was interviewed by an MCSO investigator and advised the investigator that he was purchasing methamphetamine ICE from an individual from the Birmingham area named Hielera and apprised authorities of where in Mobile County he would meet his supplier and gave authorities a detailed description of Hielera's vehicle. (*Id.* at 3-4.) Rivera then made contact with his supplier using his cell phone—which was in the custody of the Sheriff's Office following the cooperator's arrest (*compare id. with* Doc. 40, at 10)—to see if he could meet up with him and purchase three ounces of ICE (*see id.*). Hielera—later identified as Montano-Lopez—informed Rivera that he had the ICE but that he and his co-workers were leaving Mobile to return to Birmingham; therefore, he suggested that they meet halfway to consummate the deal. (*See* Doc. 30, at 4.) Investigators with the MCSO decided to set up surveillance on I-65 to see if they could spot Hielera's vehicle. (*Id.*) At about 4 p.m., Sheriff's deputies observed the described vehicle passing them; the officers stopped the vehicle for failing to signal a lane change. (*See id.*) There were five individuals in the vehicle at the time of the stop. (*Id.*) The officers allowed a drug dog to conduct a free air search of the exterior of the vehicle and the dog alerted "to the presence of narcotics on the passenger side door and bed area of the vehicle." (*Id.*) This active alert led to a search of the interior of the vehicle and the dog alerted on a green Navigator bag which Montano-Lopez identified as his bag. (*Id.*) A search of the green bag netted "three round golf ball sized objects in black tape which were concealed in a sock in the end compartment of the bag." (*Id.*) One of the officers cut open one of the round objects and found that it contained a white powdery substance which "field-tested positive for the presence of methamphetamine." (*Id.*) After arresting Montano-Lopez and advising him of his *Miranda* rights, the investigator who interviewed Rivera called the cell phone number Rivera called earlier in the day and the cell phone in Montano-Lopez's front pants pocket began ringing;

the investigator retrieved the cell phone from petitioner's pocket and found his cell phone number displayed on the screen as an incoming call. (*Id.*) After Montano-Lopez was transported to the Office of Homeland Security for an interview, he admitted that he sold methamphetamine ICE to Rivera on several occasions and on the date of his arrest was found in possession of three and one-half (3½) ounces of methamphetamine ICE. [1] (*Id.* at 5.)[2]

On March 28, 2013, Montano-Lopez was indicted in this Court on two charges: one count of conspiracy to possess with intent to distribute methamphetamine ICE, in violation of 21 U.S.C. § 846; and one count of possession with intent to distribute methamphetamine ICE, in violation of 21 U.S.C. § 841(a)(1). (Doc. 1, at 1-2.)

The defendant was arraigned on April 10, 2013; Clark Stankowski, Esquire, was appointed as counsel for Montano-Lopez and interpreter Bethany Corp-Edwards participated by telephone for translation purposes. (Docs. 10 & 11; *see also* Minute Entry for April 10, 2013.) During Montano-Lopez's April 16, 2013 detention hearing, interpreter Christopher Griffin participated by telephone to translate the proceedings for the defendant. (Doc. 16; *see also* Minute Entry for April 16, 2013.)

On May 29, 2013, at a change of plea hearing, Montano-Lopez entered a counseled guilty plea to both counts of the indictment. (Doc. 40, at 12.) It is at this hearing that the petitioner contends there was no interpreter present (*see* Doc. 38, at 4); however, the record clearly indicates the contrary (Doc. 40, at 2 & 13). Examination of the official transcript from the guilty plea hearing shows that interpreter Michael Kagan participated by telephone from Las Cruces,

---

[1] The defendant also admitted that he illegally entered the United States from Mexico in 2011. (*Id*. at 4.)

[2] The material facts surrounding petitioner's arrest contained in the Presentence Investigation Report are substantially similar to those set forth by Assistant United States Attorney Gloria Bedwell during the guilty plea proceeding. (*Compare* Doc. 30, at 3-5 *with* Doc. 40, at 9-11.)

3

New Mexico and translated the proceedings for the defendant.[3] (*Id*.) When the defendant was asked if he was "fully satisfied with the representation you've received from your attorney in this case . . .," the defendant replied "yes." (*Id*. at 3 & 4.) And, after a detailed explanation of the charges against him, the plea he was entering into, and the statutory sentences he could serve as a result, the defendant pled guilty to both charges against him, all with the assistance of an interpreter. (*Id*. at 12; *see also id*. at 4-9.)[4]

On September 6, 2013, Montano-Lopez was sentenced to concurrent forty- eight-month terms of imprisonment. (Doc. 35, at 2.)[5] As with all other key proceedings in the case, Montano-Lopez was assisted by an interpreter during sentencing, again Mr. Kagan. (*See* Minute Entry dated September 6, 2013.) Thus, examination of the record in this case reflects that at all proceedings where the defendant was present, an interpreter was also present by telephone.

## **CONCLUSIONS OF LAW**

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the

---

[3] The docket sheet does not reflect the fact that an interpreter was present at the guilty plea hearing; however, a review of the official transcript from the proceeding shows that an interpreter participated. (*See id.*)

[4] That Montano-Lopez received the services of an interpreter is clear from the fact that he insisted he sold drugs to Rivera on only one occasion prior to the date of his arrest. (*See id*. at 11.) This statement by Montano-Lopez prompted his attorney to inform the Court that although there was some disagreement over the number of "deals" between his client and Rivera, such facts were immaterial to the plea. (*Id*.) And, indeed, the Court obtained from Montano-Lopez the concession that "he was in possession of the drugs on th[e] date [of his arrest] and that he agreed with others to possess those drugs[.]" (*Id*. at 12.)

[5] These sentences were outside the advisory guideline range of 70 to 87 months (*compare* Doc. 35, at 2 *with* Doc. 36, at 2) because of "the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. Section 3553(a)(1)[.]" (Doc. 36, at 4.)

maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4 of the Rules Governing Section 2255 cases states that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." 28 U.S.C. foll. § 2255, Rule 4(b). Because the record of prior proceedings in this case clearly establishes that Montano-Lopez is not entitled to relief on his ineffective assistance of counsel claim, it is proper for this Court to summarily dismiss the motion to vacate. *See id*.

Here, the sole argument made by petitioner is that constitutionally ineffective assistance of counsel at all hearings—with the exception of his sentencing—due to the lack of an interpreter being present entitles him to relief afforded by 28 U.S.C. § 2255. In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Jones v. United States,* 478 Fed.Appx. 536, 539-540 (11th Cir. Sept. 23, 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.").[6] "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." *Demar v. United States*, 228 Fed.Appx. 940, 950 (11th Cir. Jun. 21, 2007) (quotation marks, brackets and citations omitted).

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

5

The *Strickland v. Washington* standard for analyzing claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). The Eleventh Circuit has held that "'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, as in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.'" *Carter v. United States*, 288 Fed.Appx. 648, 649 (11th Cir. Aug. 4, 2008), quoting *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson v. Alabama,* 256 F.3d 1156, 1176 (11th Cir. 2001) (citation omitted), *cert. denied sub nom. Johnson v. Nagle,* 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. Jul. 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

The petitioner contends that "[t]he only time []he [] had an interpreter was at his sentencing," and, therefore, he did not understand what was "going on," leading to ineffective assistance of counsel. (Doc. 38, at 4.) However, the record points to the contrary. The record reflects that an interpreter participated by telephone at arraignment, the detention hearing, the guilty plea hearing, and sentencing. (*Compare* Minute Entries for April 10, 2013, April 16, 2013, and September 6, 2013 *with* Doc. 40, at 2 & 13.) When the Court asked petitioner during his guilty plea proceeding whether he was "fully satisfied with the representation you've received from your attorney in this case . . .," the defendant replied "yes." (Doc. 40, at 3-4.) Moreover, Montano-Lopez informed the Court that he had discussed with his attorney all facts surrounding his case (*see id.*) and specifically agreed that "he was in possession of the drugs on th[e] date [of his arrest] and that he agreed with others to possess those drugs[.]" (*Id*. at 12.)

The burden of persuasion is on the petitioner to prove by a preponderance of the evidence both that his attorney's performance was unreasonable, and that the unreasonable performance prejudiced him. *Demar*, 228 Fed.Appx. at 950. Here, the petitioner has failed to establish how his attorney provided ineffective assistance and how he was actually prejudiced. There was an interpreter present (by telephone) at all critical stages of the prosecution, providing translations to the petitioner and assuring he understood what was unfolding. When asked by the Court if he was satisfied with the services of his attorney, and whether he had discussed all of the facts of the case with him, the petitioner answered in the affirmative. (Doc. 40, at 3-4.) There is no contention made by petitioner that the services of the interpreter were not sufficient, but simply that there was not one provided at all, which is clearly false. Inasmuch as the foregoing makes clear that counsel discussed all the facts surrounding the charges with Montano-Lopez, that an interpreter participated at every critical stage of petitioner's prosecution, and that petitioner

admitted to being in possession of methamphetamine ICE on the date of his arrest and agreed with others to possess the drugs, Montanto-Lopez has failed to factually establish that his attorney was deficient or that the result of his guilty plea proceeding would have been different.[7] More pointedly, because an interpreter was present (by telephone) at all critical court proceedings and the petitioner clearly understood the charges and admitted he was guilty of those charges, he is not entitled to relief and his motion to vacate is due to be summarily dismissed in accordance with Rule 4 of the Rules Governing Section 2255 Cases.

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied entirely on the merits of an underlying constitutional claim, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id.* at 483–84, 120 S.Ct. at 1603-

---

[7] The record in this case clearly reflects that petitioner was guilty of the drug charges and had he chosen to go to trial (rather than plead guilty), his total offense level would have been pushed "up" to 30 because he would not have received any adjustments for acceptance of responsibility. (*See* Doc. 30, at 6-7.) With a total offense level of 30 and a criminal history category of I (*see id.* at 7 & 10), Montano-Lopez would have been facing guideline sentences of 97 to 121 months, *see* **SENTENCING TABLE**. Given the sentences petitioner would have faced had he insisted on going to trial, Montano-Lopez simply cannot establish that he suffered any prejudice in this case. Petitioner could not hope for a better sentence than he received in this case.

1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"). With respect to Montano-Lopez's claim of ineffective assistance of counsel discussed above, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2255 motion to vacate should be resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability as to his ineffective-assistance-of-counsel claim.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

**CONCLUSION**

The Magistrate Judge **RECOMMENDS** that petitioner's motion to vacate, set aside or correct his sentence (Doc. 38) be **SUMMARILY DISMISSED** because his motion and the record of prior proceedings plainly reflect that he is not entitled to relief pursuant to 28 U.S.C. § 2255. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [ ] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 29th day of July, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**